## Case No. 12,906.

### SINN et al. v. UNITED STATES.

[14 Blatchf. 550.] [1]

Circuit Court, S. D. New York. July 1, 1878.

CUSTOMS DUTIES — FAIR MARKET VALUE — MANU-FACTURER.

S., through his agent, K., purchased, in England, unfinished goods, and, through K., had them dyed there by one man and made up by another. In each case S. paid the cost of the work. K. then invoiced the goods to S., at New York at a price equal to the cost of purchase, dyeing and making up, with K.'s commissions added. Entry of the goods was made on such invoice, on the ordinary purchaser's oath, provided for by section 4 of the act of March 1, 1823 (3 Stat. 730; now section 2841 of the Revised Statutes). The valuation in the invoice was below the fair market value: Held, that the invoice and the oath ought to have been such as the statute requires from a manufacturer.

[Cited in U. S. v. Two Hundred and Eight Bags of Kainit, 37 Fed. 327.]

[Error to the district court of the United States for the Southern district of New York.

[This was an action by the United States against Samuel Sinn and others. From a verdict in the district court in favor of the United States (case unreported), error was brought.]

Sigismund Kaufmann, for plaintiffs in error.

Sutherland Tenney, Asst. Dist. Atty.

WAITE, Circuit Justice. Section 2841 of the Revised Statutes, which was in force when the seizure in this case was made, as section 4 of the act of March 1, 1823 (3 Stat.

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

730), provides, that, whenever merchandise imported into the United States is entered by invoice, one of three prescribed oaths, according to the nature of the case, shall be administered by the collector of the port, at the time of the entry, to the owner, importer, consignee, or agent. The first is the oath of a consignee, importer, or agent; the second, that of an owner, in cases where merchandise has been actually purchased; and the third, that of a manufacturer, or owner, in cases where merchandise has not been actually purchased. The last oath applies to all cases where the merchandise had not been purchased by the owner, or his agent, in the ordinary mode of bargain and sale. The oath, when goods had been actually purchased, was to the effect, that the invoice produced contained a just and faithful account of the actual cost of the goods, * * * of all charges thereon, "including charges of purchasing, carriages, bleaching, dyeing, dressing, finishing, putting up and packing," &c., while that when the goods had not been actually purchased was, that the invoice contained "a just and faithful valuation of the same, at their fair market value, including charges of purchasing, carriages," &c., (as in the other case.) On the arrival in New York of the goods now in question, they were entered by the claimants by invoice, and the ordinary purchaser's oath was taken. They were seized under the customs laws, as forfeited to the United States, and the information alleges, as cause of forfeiture: (1) That they were not invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties, &c. (2.) That the "invoice was made up with intent, by a false valuation, to evade and defraud the revenue, in this, that the goods, &c., mentioned therein, being subject to an ad valorem duty, and obtained by purchase, were falsely valued in the invoice, and were charged therein at a less price than the actual cost thereof," &c. (3.) That the invoice was also made up with like intent, in this, that the goods, &c., mentioned therein, having been obtained otherwise than by purchase, were falsely valued in said invoice, and were charged therein at a less price than the actual market value thereof at the time and place when and where the same were procured or manufactured, &c.

The case was tried before section 16 of the act of June 22, 1874 (18 Stat. 189), came into effect, which made actual intention to defraud an essential question in suits to enforce forfeitures under the customs laws. Upon the trial, the evidence introduced by the claimants showed, that the claimants, through their agent, M. Kaufman, purchased the goods, at Bradford, England, in an unfinished state, known to dealers as "in the grey." They then, through the same agent, had them dyed by one man and made up by another, in each case paying the cost of the work. Kaufman then invoiced the goods to

them at a price equal to the cost of purchase, dyeing and making up, with his commissions added. The entry was made upon this invoice. Testimony was offered by the government, clearly showing that the valuation in the invoice was below the fair market value. At the close of the testimony, the claimants asked the court to instruct the jury to find in their favor. This was refused, and the court did charge, that the question for the jury "to determine was, whether the actual cost of the goods was correctly stated in the invoices; that, if they did not believe, from the testimony, that the claimants made a bona fide purchase of the said goods from M. Kaufman, at the prices testified to, then the government was entitled to a verdict; that, if the claimants purchased the goods in the grey, and had them dyed at their own expense, and put up at their own expense, and did not buy them in a finished state, they were, in law, manufacturers, and not purchasers; that, in such event, the invoices should have stated the actual market value; and that there was no pretence that said invoices stated the actual market value." To this charge and refusal to charge exception was taken. A verdict having been rendered against the claimants, and judgment duly entered thereon, the case is here upon error. The errors assigned are: (1) That the court refused to charge the jury to bring in a verdict for the claimants. (2) That the court charged, that, if the claimants purchased the goods in the grey, and had them dyed at their own expense and put up at their own expense, and did not buy them in a finished state, they were, in law, manufacturers and not purchasers. (3) That the court charged, that there was no pretence that said invoices stated the actual market value.

Clearly, the claimants did not buy the goods "in the ordinary mode of bargain and sale." Kaufman was their agent to buy the unfinished article and have it dyed and made up. When he invoiced the goods, it was not as a sale, but as a statement of the result of his agency in purchasing the goods and causing them to be manufactured. The goods, when imported, were not in the same condition as when bought. Their value had been materially increased by what had been done by the manufacturers. For the purposes of entry, this increase is not to be measured by its cost, but by its effect upon the price of the article in the market.

The claimants are in no better condition than they would be if they had themselves bought the unfinished article in Bradford, and procured personally to be done just what Kaufman did. He was their agent, and his acts were their acts. The case is in no different position from what it would have been if the dyer or the finisher had made the original purchase, and had, by his own labor and skill, completed the work to be done. In such a case it could not seriously be claimed that he might enter the goods upon an invoice which fixed the valuation at the actual cost to himself, if that cost was below the actual market value of the finished article at the time.

It seems to be clear, therefore, that the invoice to be furnished, and the oath to be taken, were such as the law requires from the manufacturer. By section 2864 of the Revised Statutes, a re-enactment of section 1 of the act of March 3, 1863 (12 Stat. 738), if any owner, &c., of merchandise, knowingly makes an entry thereof by means of a false invoice, "or of any invoice which does not contain a true statement of all the particulars" by law required, the merchandise is subject to forfeiture. Every importer is presumed to know the law under which he makes his importations. In contemplation of law, therefore, when he makes an entry upon an invoice which does not state truly what the law requires, he knowingly does it. At the time of this seizure and trial, no question of actual fraudulent intent need be considered. Knowledge, actual or presumptive, was all that the courts need inquire into. If the forfeiture was incurred without wilful negligence, or any intention to defraud on the part of the owner, a remission of the forfeiture, or a restoration of the proceeds of the sale, might be obtained on timely application to the secretary of the treasury. Section 5292 of the Revised Statutes, and the several statutes from which that section was taken. In this condition of the law the charge as given was undoubtedly correct. If there was no wilful negligence in the case, or actual intention to defraud, the secretary of the treasury alone has power to relieve from the consequences of the apparent violation of the law.

This makes it unnecessary to consider the first assignment of error. As to the third, it is sufficient to say, that, if there was, in fact, a pretence that the goods were invoiced at their market value, the preponderance of testimony is so decidedly the other way, that the judgment ought not to be reversed on that account. The testimony is all set forth in the bill of exceptions, and, if this part of the charge had not been given, and a verdict had been rendered in favor of the claimants, the court should promptly have set it aside. Under such circumstances, the judgment ought not to be reversed, even though, in fact, it was insisted that the evidence justified a contrary conclusion.

The judgment is affirmed.