For the reasons stated herein, the judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* ALEX SCHECHTER CORP. (No. 4063) [1]

---

[1] T. D. 49240.

United States Court of Customs and Patent Appeals, October 25, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Daniel I. Auster*, special attorney, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument October 7, 1937, by Mr. Lawrence and Mr. Edward P. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The present proceeding is an appeal by the United States from the judgment of the Third Division, affirming the decision of a single judge, of the United States Customs Court in a reappraisement matter. The imported goods were dressed and dyed rabbit skins, entered under the Tariff Act of 1930. They were appraised by the local appraiser at the port of New York upon United States value, section 402 (e) of the Tariff Act of 1930. The appraiser made his appraisement upon the theory that the imported goods were secured by the importer otherwise than by purchase, within the meaning of the language used in said section 402 (e), which is as follows:

SEC. 402 * * * (e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The importer appealed to reappraisement, claiming that the merchandise covered by the appraisement was purchased goods within the meaning of said section, and that it was entitled, in addition to the allowances made by the appraiser, to a further allowance for profits not to exceed 8 per centum, and a reasonable allowance for general expenses, not to exceed 8 per centum, on the valuation of its said goods. The trial court agreed with the position taken by the importer, that an allowance for general expenses and of 8 per centum for profits were properly allowable, and directed the allowance of the same. In passing upon the estimate of the local appraiser, the trial court and the division both held that an item of commission on

purchases was improperly allowed as an element of general expenses and omitted the same, thus arriving at the item of general expenses, 4.3 per centum.

The United States made application for a review of the decision of the trial court, claiming that the said court erred in finding that the imported goods were purchased goods, and that, hence, no allowance should have been made for general expenses and profit. This, as we view it, is the only issue now before us. Both parties agree that there was neither export nor foreign value of the imported goods. The only controversy is, under the facts as shown by the record, were the imported goods secured by the importer otherwise than by purchase?

Two witnesses were called on behalf of the importer, and the customs examiner at the port of New York on behalf of the Government. In addition, two reports of Government representatives were introduced in evidence.

From the testimony of Alex Schechter, president of the appellee, it appears that the appellee, at the time of exportation, was in the business of buying and selling rabbit skins, with its principal place of business at New York. The rabbit skins in which it deals are purchased in the raw condition in Paris, France, by Mr. Schechter, who frequently buys them personally and then turns them over in their raw condition to a dresser and dyer, A. Hollander & Son, which has a factory near Paris. These skins are paid for by the importer with notes given therefor. A. Hollander & Sons then dresses the skins, dyes them, and puts them up into lots of approximately 50,000 each, and then computes the average price of the skins in each lot, including in these prices the original price paid for the skins, plus the cost of dressing and dyeing. These lots are then shipped to the importer, together with the invoices furnished by A. Hollander & Son, made up as above stated. Rabbit skins, both French and Australian, are sometimes purchased on the Paris market by A. Hollander & Son, on the order of the importer, and are similarly treated and shipped to the importer.

It appears that the importer had the service of a public accountant, who, for the time covered by the present importation, by the use of the books and accounts of the importer, computed the general expenses of the importer, and also his profits on the business. The figures appear in the record as to the computation of the items of general expenses and profit. It is, however, unnecessary to go into that matter, as it is conceded by the Government that if the importer is entitled to deductions for general expenses and profit, then 4.3 per centum and 8 per centum are the correct percentages, respectively.

It is first argued by the Government that the importer should not be heard to claim here that the imported goods were purchased goods, because of the original consumption entry and the amended consumption entry, both of which were on Forms 7501–E, in both of which there is the statement, under oath: "* * * the merchandise was obtained by him otherwise than in pursuance of a purchase, or an agreement to purchase, except ——." This, it is said, should be taken as an admission by the importer that the goods were not purchased goods.

The importer calls attention to the confusion likely to arise by the use of various customs forms, and cites the opinion of Judge Somerville, and his comment thereon. T. D. 27243, 11 Treas. Dec. 467. The following language of Judge Somerville is applicable:

> The invoices, which, for the sake of convenience, represent the agents of the importing house as the sellers of the goods are, in our judgment, subject to explanation, and do not operate as an estoppel against the importers so as to prevent them from explaining the facts of the case. *In re* Smith & Sons, G. A. 5443 (T. D. 24721), affirmed in 132 Federal Reporter, 1007 (T. D. 25394). As observed by Judge Story in the case of United States *v.* May (3 Mason, 98; 26 Fed. Cas., 1224), cited and approved by the Board in Smith's case (*supra*):

> As to the form in which the invoice is made out, it is conclusive upon no person. If anything is proved by it, it must be taken altogether. But it is certainly open to explanation, and the explanation given in evidence shows that the truth of the case is as the defendant has ascertained it to be.

Counsel for the importer also makes the following pertinent observation in this regard:

> As a matter of fact, when Congress in 1926 codified the laws of the United States, including the customs laws, the following provision which had long existed in the Revised Statutes was reenacted in its proper place in the customs provisions in Section 233, Chap. 3, Title 19 (Customs duties) of the Code of Laws of the United States:

> *Sec. 233. Departure from Prescribed Forms.* In cases where the forms of official documents, as prescribed by this title, shall be substantially complied with and observed, according to the true intent thereof, no penalty or forfeiture shall be incurred by a deviation therefrom. (R. S. Sec. 2769.)

If, then, the subject is open to examination, were the goods imported here "secured otherwise than by purchase?" We are of opinion they were purchased goods. When Schechter or his agent, A. Hollander & Son, purchased these raw rabbit skins, they became the property of Schechter. Title vested in him and was not divested by any subsequent act until they were sold by him to purchasers in this country. That the furs were so purchased by the importer is admitted by the Government in its brief. However, it is claimed by Government counsel that the property which was purchased was not imported, and that, hence, the imported goods were not the purchased goods, but that the imported goods were dressed furs. It is true that the imported goods differed from the raw skins as to value and dutiabil-

ity. However, they were dutiable according to the United States value thereof; that is, the value of dressed furs on this market. The processing in France does not at all make it possible that the importer thereby may gain a more favorable duty rate. If, between the time these raw rabbit skins go into the hands of A. Hollander & Son, and the time they reach the hands of the importer, they are destroyed by fire, or other casualty, the goods are the goods of, and the loss is the loss of, the importer, and it has full and complete title to the same. If this be true, and they are still rabbit skins, they are purchased goods. It is true the purchaser has improvements placed thereon. They are dressed and dyed, but they are still the goods which the importer purchased.

Government counsel claims this case is governed by *Sinn et al.* v. *United States*, Case No. 12906, 22 Fed. Cas. 226. This was an action by the United States against Samuel Sinn *et al.*, in which the property of Sinn imported into the United States was seized as improperly invoiced, and the owner was charged with the design to evade the duties and defraud the revenues. The importer, in the cited case, through its agent, purchased certain goods in England in an unfinished state, known as "the grey." Then, through their agent, they had them dyed by one person and made up by another, in each case paying for the work. The agent then invoiced the goods to them at a price equal to the cost of purchase, dyeing, and making up, with his commissions added. The Government then showed that the valuation in the invoice was lower than the fair market value. As we read this case, it was decided upon the feature that the importer had not attempted to give the market value of his imported goods, but, rather, a statement of the amount which he had paid for them, including the labor expended thereon. This, according to the court, was not what the law required, and hence the law had not been complied with.

The facts in the case at bar are much different than in the case cited, nor are the issues the same.

The case of *United States* v. *Massce & Co. et al.*, 21 C. C. P. A. (Customs) 54, T. D. 46379, can not be said to be of controlling importance here. The imported goods in that case were purchased, not in the country of export, but in the country of import.

There is substantial evidence in the record to support the findings of the Third Division of the United States Customs Court in this case. We find no errors and its judgment is *affirmed*.